**Larry Darnell BUTLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 66870, 66872.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 23, 1983.

John C. Hendrik, court appointed, Dallas, for appellant.

Henry Wade, Dist. Atty., John D. Nation and Stewart C. Robinson, Jr., Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for aggravated kidnapping. V.T.C.A. Penal Code, Sec. 20.04(a)(2).[1] After finding appellant guilty, the jury assessed punishment at ninety-nine years. Appellant also appeals the court's orders revoking his probation and sentencing him to ten years each upon two original convictions for aggravated assault.

Appellant was convicted of intentionally abducting his wife on October 25, 1979, with intent to use her as a shield or hostage.

---

1. Sec. 20.04(a)(2), supra provides:

"(a) A person commits an offense if he intentionally or knowingly abducts another person with the intent to:

". . .

"(2) use him as a shield or hostage."

In his first ground of error appellant complains that the evidence is insufficient to support the conviction because the State failed to prove that appellant intended to use his wife as a shield *at the time he abducted her.*

The evidence shows that appellant broke into his in-laws' house, where his wife was living, and prevented her liberation by brandishing a gun. Appellant took his wife and child around the neighborhood on foot in search of a car. The Dallas police were called and when they approached appellant a shoot-out ensued in which an innocent bystander was killed. Ten or fifteen minutes after the shoot-out the police convinced appellant to surrender.

Appellant concedes that he used his wife as a shield both against his mother-in-law and the police. He contends, however, that, "it is clear from his testimony, his wife's, and the police officers, that the appellant went to his mother-in-law's house for the express purpose of getting his wife and child to go home with him to California . . . At the time he left his mother-in-law's house, the abduction was already completed; any shielding that occurred happened after the offense had been committed."

Further, "The holding of the complainant was the purpose of the abduction, it was not done to cause anything else to occur. The shielding that happened was incidental to the appellant's purpose of having his family with him. This is not a case where a person is seized so that one escaping from the scene of an offense can improve his chances of getting away."

Appellant seems to be making two arguments here. One is that under Sec. 20.-04(a)(2) the intent to use the abductee as a shield or hostage must be formed in the accused's mind at the time the abduction begins. The other argument is that if the overall intent of the actor is not to use the abductee as a shield or hostage his incidental intent to do so is irrelevant.

We disagree with appellant's interpretation of Sec. 20.04. As the explanatory comment to Sec. 20.04 in Branch's Third Edition of the Texas Annotated Penal Statutes

notes, "The Legislature apparently recognizing that the crux of kidnapping should be the possibility of death or serious bodily injury to the victim or another, included Sub-sections (a)(1)–(6) to cover those situations where a greater likelihood of harm would be present and made each offense under this section a felony of the first degree." Obviously, there is just as much likelihood of harm when the accused forms the intent to use his victim as a shield some time after the abduction begins as there is when he forms the intent before or at the very moment the abduction begins.

■ Appellant is incorrect in his notion that the abduction was over as soon as he used his gun to prevent his wife's liberation. The abduction continued up until the time appellant surrendered. If he had the intent to use the victim as a shield or hostage at any time during the abduction, the statute covers such conduct.

Appellant's insistence that his overall intent was merely to "have his family with him" in California is irrelevant. V.T.C.A. Penal Code, Sec. 6.03(a) declares that:

"A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result."

■ It was appellant's objective during the abduction to use his wife as a shield. This is not altered because his *overall objective* was to take her to California. The presence of an overall intent or objective cannot mean that an accused is incapable of forming other intents. Appellant's first ground of error is overruled.

■ In his second ground of error, appellant asserts that the trial court erred in failing to grant his motion to quash the indictment because it failed to inform him of the penalty range applicable to the charge. Sec. 20.04(b) states that:

"An offense under this section is a felony of the first degree unless the actor voluntarily releases the victim alive and in a

safe place, in which event it is a felony of the second degree."

Appellant contends that when he raises the issue by way of a motion to quash, "the State's pleadings should serve to inform him whether this issue is admitted or denied so that he may prepare his proof accordingly."

In *Smith v. State,* 541 S.W.2d 831, (Tex. Cr.App.1976), cert. denied, 430 U.S. 937, 97 S.Ct. 1565, 51 L.Ed.2d 783, this Court held that an indictment under Sec. 20.04 is not fundamentally defective for failure to allege that the victim was not released in a safe place. We noted that the release of a victim alive and in a safe place is not an element of aggravated kidnapping. Neither does this provision constitute an exception to the offense.

The rationale upon which *Smith* was based appears equally applicable in an instance where a motion to quash is filed. In *Smith* we said, "The State is not bound to negate existence of such a fact. The proof of such a release would be in mitigation of punishment and not an exception under Section 2.02 supra."

■ Pleading failure to voluntarily release in a safe place has no bearing on notice at the guilt-innocence stage of the trial and does not affect an accused's ability to plead the judgment (that may be given in an indictment for aggravated kidnapping) in bar of any prosecution for the same offense. Appellant's second ground of error is overruled.

■ In his third ground of error appellant contends that the trial court erred in admitting testimony by his wife concerning marital communications.

Art. 38.11, V.A.C.C.P., reads in pertinent part:

"Neither husband nor wife shall, in any case, testify as to communications made by one to the other while married ... However, a wife or husband may voluntarily testify against each other in any case for an offense involving any grade of assault or violence committed by one against the other ..."

Appellant concedes that aggravated kidnapping is an offense involving a grade of assault or violence and that his wife was competent to testify concerning the offense. He complains, however, of the portions of her testimony relating to marital *communications.*

Appellant's wife testified that her husband refused to take psychological counseling and that on one occasion he told her, "If I can't have you no one can." Both of appellant's objections to the above testimony were sustained and instructions to disregard were given. Error, if any, was cured.

■ Appellant's wife also testified that *she asked* appellant to seek counseling. Appellant's objection to this testimony was overruled. In light of the overwhelming evidence against appellant, error, if any, was harmless.

■ Appellant's wife testified that prior to the kidnapping he made threatening phone calls to her at home and at work. (Appellant and his wife had lived apart since 1978). Appellant's objections to this testimony were initially sustained but later overruled. In *Calloway v. State,* 92 Tex. Cr.R. 506, 244 S.W. 549, defendant, charged with murdering his wife, challenged the admissibility of a threatening letter he had written to her. This Court stated:

"If appellant had made an assault upon his wife which had not resulted in her death, but only in serious injury, and had been prosecuted therefor, it would not be contended seriously, we take it, but that she could have testified to threats made by him, showing the motive for the assault ..." 244 S.W. at 552.

We find that appellant's threats, made to his wife prior to the alleged kidnapping, were admissible. See also, *O'Bryan v. State,* 591 S.W.2d 464, 465; *Rice v. State,* 54 Tex.Cr.R. 149, 112 S.W. 299; *Hall v. State,* 31 Tex.Cr.R. 565, 21 S.W. 368.

■ The trial court overruled appellant's objections to the following testimony of his wife: that appellant during the abduction said that he was going to kill his wife; that

according to appellant he brought string with him in order to bind his mother-in-law; that appellant asserted that his son would come with appellant and his wife on their journey; and that appellant said the three of them would rob and steal their way to California.

All of these statements were made by appellant during the commission of the kidnapping. They were not privileged communications but instead were part of the res gestae of the offense. *Dark v. State,* 406 S.W.2d 457 (Tex.Cr.App.1966); *Johnson v. State,* 95 Tex.Cr.R. 269, 252 S.W. 554; *Cole v. State,* 48 Tex.Cr.R. 439, 88 S.W. 341, 343. Appellant's third ground of error is overruled.

In his final ground of error appellant asserts that the testimony of his wife concerning the following matters was improperly admitted in violation of Art. 38.11: appellant's committing trespass and burglary of his mother-in-law's home in order to facilitate the kidnapping; appellant's assault on his mother-in-law by pointing a pistol at her; appellant's pointing of a pistol at a policeman, a civilian on the street, and the deceased bystander; appellant's firing of a gun at a policeman.

Appellant contends that his wife cannot testify concerning such actions under Art. 38.11 since they do not involve an assault or violence against her.

All of the above testimony dealt with events occurring during the commission of the kidnapping or events which facilitated the kidnapping. It was admissible as part of the res gestae of the offense. *Dark v. State,* supra.

Further, appellant's reading of Art. 38.11 is too narrow. Under that statute, "a wife or husband may voluntarily testify against each other *in any case for an offense* involving any grade of assault or violence *committed by one against the other.*" (Emphasis added.) As long as the *case* involves a violent or assaultive offense by one spouse against the other, *nothing in Art. 38.11* prevents the testifying spouse from going into other non-communicative events

that are otherwise admissible. Appellant's final ground of error is overruled.

The judgments are affirmed.

CLINTON and CAMPBELL, JJ., concur.

ONION, P.J., not participating.